NORTHWEST AUTO COMPANY *v.* MULLIGAN
LINCOLN-MERCURY, INC.

1. APPEAL AND ERROR—NONJURY CASES—PREPONDERANCE OF EVIDENCE.

 The function of deciding credibility and finding of facts in nonjury law cases is committed to courts of original jurisdiction and the Supreme Court does not reverse or remand on a claimed clear preponderance of evidence, in the absence of convincing circumstances disclosing that crucial proof has been overlooked or ignored.

2. LANDLORD AND TENANT—SECURITY DEPOSIT—REPAIRS.

 Finding of trial court that tenant under 5-year lease had made alterations in building with the acquiescence of defendant lessor's predecessor and had spent substantial sums in maintaining and repairing the building and its contents in accordance with the lease's requirements *held*, supported by evidence, and fact that after termination of lease defendant also spent substantial sums in placing the building in condition suitable to its use would not preclude lessee's recovery of entire security deposit.

3. SAME—CONDITION OF PREMISES ON SURRENDER OF LEASE.

 A landlord is not entitled to the surrender of garage premises by the tenant at the close of the term in a newly-decorated condition, or, on surrender, to complete rebuilding of service equipment normally subjected to continuous heavy duty but only to compliance with lease's terms involving conditions existent when tenancy commenced as well as when it ended and interim depreciation known as "reasonable wear and tear."

4. SAME—SURRENDER OF PREMISES—REASONABLE WEAR AND TEAR—EVIDENCE.

 Whether or not the lessor or lessee of premises had the burden

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 1152 *et seq.*
[3] 32 Am Jur, Landlord and Tenant §§ 779, 802, 805.

of showing the cause of damage to the premises is not determined in action by lessee to recover security deposit, where there was substantial testimony upon which to base finding that tenant had surrendered the premises in like condition as taken, reasonable wear and tear excepted.

Appeal from Wayne; Fenlon (Edward H.), J., presiding. Submitted April 3, 1957. (Docket No. 24, Calendar No. 47,165.) Decided May 17, 1957.

Action by Northwest Auto Company, a Michigan corporation, against Mulligan Lincoln-Mercury, Inc., a Michigan corporation, for recovery of security deposit upon expiration of lease term. Counterclaim by defendant for damages to leased property. Judgment for plaintiff. Defendant appeals. Affirmed.

*David Vogel (Meyer Weisenfeld,* of counsel), for plaintiff.

*Reid & Gilmore,* for defendant.

By indenture of lease dated January 31, 1950, Gulley & Russell, Inc., as lessor, let certain business property in Detroit to plaintiff Northwest Auto Company. The demised term was 5 years ending February 1, 1955, and the lease specified that the premises be used "as an automobile sales and service." By an "assignment of lease" dated September 29, 1953, defendant Mulligan Lincoln-Mercury, Inc., acquired and assumed the lessor's position under and with respect to such lease.

Three paragraphs of the lease are brought into play by the pleadings in this case. They read, respectively, as follows:

"Third: That in addition to the payment of rent as is herein provided, the lessee shall pay all costs of maintaining and repairing, both the exterior and

interior of the said building, and the said building equipment, including the furnace and heating plant, the air conditioning unit, the 1 completely hydraulic hoist, and the 2 airdraulic hoists, now in and upon the premises, and to surrender same at the termination of this lease in a like condition as taken, reasonable wear and tear thereof excepted.  *  *  *

"Eighth: No alterations or improvements to the leased premises shall be made at any time without first obtaining the consent in writing of the lessor, and any and all improvements, additions, or alterations made by the lessee after such consent shall have been given and obtained, including any and all fixtures installed, excepting trade fixtures, shall remain in and upon the premises as the property of the lessor at the expiration or sooner determination of this lease.

"The lessee shall at its own expense repair any damage caused by the removal of any trade fixtures, and shall restore the premises to its original condition at its own expense.  The lessee agrees to save the lessor herein harmless on account of claims for mechanics, material men or other liens in connection with any alterations, additions or improvements to which the lessor may give its consent from time to time in connection with the leased premises, and the lessee shall, if required by the lessor, furnish such waiver or waivers of lien or bond in form and with such surety as is satisfactory to the lessor, and as lessor may require before starting any work in connection with making alterations, additions, or improvements to the leased premises.

"The lessee shall not place weights on any portion of the leased premises beyond the safe carrying capacity of the structure, or shall the lessee overload the electric wiring now in and upon the premises.  *  *  *

"Fifteenth: 'Security Deposit'

"The lessee herewith deposits with the lessor the sum of $7,500, the receipt of which is hereby acknowledged, and which sum shall be held by the

lessor for and during the term of this lease, and at the option of the lessor applied to the faithful performance of this lease by the lessor or towards the payment of the last 6 months' rent due hereunder, or said security deposit shall be held by the lessor and the unused portion thereof be returned and surrendered back to the lessee at the end of the term of this lease, or at the time of any prior determination of this lease."

At expiration of the lease, and upon yielding of possession to the defendant lessor, the plaintiff lessee demanded return of the "security deposit" of $7,500, less the final instalment of unpaid rent amounting to $1,250. The defendant lessor refused such return, assigning breach by the tenant of quoted paragraphs "third" and "eighth" of the lease. Plaintiff thereupon sued in the Wayne circuit to recover the net security deposit. Defendant, by notice of set-off and recoupment (to which it has attached a "cross declaration"), insisted and now insists that it is entitled to an offsetting award of damages, for mentioned breach, and says that it has proven such damages in the sum of $9,534.73. It asked below, and asks here on review, for an affirmative judgment in its favor calculated at $3,284.73 by deduction of the net security deposit from the mentioned total damage claim.

Trial of the pleaded issues resulted in a decision upholding plaintiff's claim and denying defendant's claim for recovery by cross action. Judgment for plaintiff was accordingly entered in the sum of $6,250. Defendant appeals.

BLACK, J. (*after stating the facts*). The case was tried to the court, without a jury. Defendant's counsel correctly characterized it, in his opening statement to the trial court, as presenting questions of fact only. He went on to say that "basically, I

think the whole thing is a question of what condition the building was in at the time possession was given up." So, and in array with the circuit judge's decision upon the facts, we are confronted again with claim that the jugment below is contrary to the clear preponderance of the evidence. In these circumstances we refer to what was said of our appellate function in *Barnes* v. *Beck,* 348 Mich 286, and proceed from that point to analyze this record of facts.

Plaintiff made a prima facie case by proving the lease; the condition of the demised building and the equipment-fixtures thereof at commencement of term; the corresponding conditions at end of term; "as good or better" conditions obtaining at end of term;* the fact of deposit, and the fact of retention of the net balance thereof by defendant. Defendant thereupon undertook proof of damages according to affirmative allegations of its pleadings. Such damages are detailed as follows in its brief:

| | |
|---|---:|
| "Repairs to air conditioning unit . . . . . | $855.34 |
| Repairs and replacement to electrical system . . . . . . . . . . . . . . . . . . . . . . . . | 1,140.00 |
| Interior painting . . . . . . . . . . . . . . . . . . | 2,260.00 |
| Hoists and replacement of broken steam and air lines . . . . . . . . . . . . . . | 2,325.39 |
| Necessary repairs to overhead door . . | 371.00 |
| Replacement of explosion-proof lights and fluorescent lights . . . . . . . . . . . . | 170.00 |
| Labor in painting and replacing glass in outer walls . . . . . . . . . . . . . . . . . . | 1,340.00 |
| Additional month's rent at old location . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,000.00" |

---

* This testimony was given by plaintiff's witness Leo J. Klem. Klem testified that he had been engaged for some years as broker in the business of selling automobile agencies; that he acted as broker in selling (in 1950), for Gulley & Russell to plaintiff, the Dodge-Plymouth agency "known as Northwest Auto Co.;" that he was familiar with the condition of the demised building and its equipment-fixtures as same stood when the lease was executed; that he knew corresponding conditions at lease-termination, at which time he "re-examined the prem-

Defendant's proof, supporting its claim for such damages, seems quite persuasive so far as this printed record can or does disclose. Had this Court been constituted and authorized to try law cases anew on pleadings and transcripts, we might agree with defendant that its said proof appears more convincing than that received in opposition. But such is not our province. We must continue to point out to the profession what is now a commonplace—that the function of deciding credibility and finding facts is committed to our courts of original jurisdiction; that we cannot reverse or remand simply because the facts found below are forcefully opposed by others shown in the record, and that we do not reverse or remand on bid of a "clear preponderance" assignment in the absence of convincing circumstances disclosing that crucial proof has been overlooked or ignored. No more need be said in view of recent treatment of this apparently troublesome rule of practice (*Schneider* v. *Pomerville,* 348 Mich 49; and *Barnes* v. *Beck, supra*).

In the case before us, and by carefully considered opinion, the trial judge analyzed the proofs and found:

"From the testimony adduced at trial, it was conclusively shown that the building was in a tenantable condition when acquired by leasehold from Gulley & Russell in the year 1950. The court is satisfied from the testimony adduced by the witnesses for the plaintiff and cross defendant and the testimony on cross-examination from one or more of defendant and cross plaintiff's witnesses, that likewise the building was tenantable for the purpose for which

ises, known now as Mulligan Lincoln-Mercury," and "from the standpoint of a dealer operating that business, that the facilities as a whole were in better condition" at end of such term than at the time he arranged for transfer of the agency from Gulley & Russell to plaintiff. Klem was subjected to a vigorous and skillful cross-examination, and it is claimed by defendant that his testimony was and is outweighed by its proof of conditions at lease-termination.

it was being used at the termination of the lease-
hold interest, February 1, 1955, and was surrendered
in like condition as taken, reasonable wear and tear
thereof excepted. It is the further opinion of the
court that the equipment was surrendered up in
like condition, wear and tear excepted.

"The court finds further that the alterations made
to the building by plaintiff and cross defendant,
claimed by defendant and cross plaintiff to have
been accomplished contrary to the terms of the lease,
were actually done by plaintiff and cross defendant
prior to the time defendant and cross plaintiff ac-
quired any interest in the property. Testimony to
the effect that the former lessors acquiesced in said
alterations was uncontradicted.

"The court is not unmindful of the fact that de-
fendant and cross plaintiff spent substantial sums
of money in order to place the building in a con-
dition suitable for its use, but notwithstanding such
sums, is of the opinion that the former occupant
likewise spent substantial sums over a 5-year ten-
ancy in maintaining and repairing the building and
its contents in accordance with its requirements and
in accordance with the meaning of the language con-
tained in the lease."

These findings are testimonially supported, par-
ticularly by plaintiff's showing of substantial ex-
penditures—during the term of the lease—for
painting of the building and keeping the equipment-
fixtures thereof as mentioned in the lease in
serviceable operating condition. Such proof impels
observation that defendant was not entitled to sur-
render of the premises in newly-decorated condition,
or, on surrender, to complete rebuilding of service
equipment normally subjected to continuous heavy
duty. It was entitled simply to performance by
plaintiff of lease covenants involving conditions ex-
istent when tenancy commenced as well as when it
ended, and interim depreciation known as "reason-
able wear and tear."

One question remains. Defendant asserts that "the burden of showing the cause of damage was not upon the lessor but was upon the lessee," and says that the trial judge failed to hold plaintiff to such burden. The question is academic, since the record shows testimony of substance on which the trial judge might properly have found the essential facts either as claimed by plaintiff or as claimed by defendant.

Affirmed. Costs to plaintiff.

SMITH, EDWARDS, VOELKER, and CARR, JJ., concurred with BLACK, J.

DETHMERS, C. J., and SHARPE and KELLY, JJ., concurred in the result.